# United States Court of Appeals

## For the Eighth Circuit

_____

No. 21-3366
_____

Rebecca G. Lancaster, as the Executrix of the Estate of James L. Lancaster, deceased

*Plaintiff - Appellant*

v.

BNSF Railway Company, formerly doing business as Burlington Northern and Santa Fe Railway Company

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Nebraska - Lincoln
_____

Submitted: May 9, 2023
Filed: August 2, 2023
_____

Before SHEPHERD, STRAS, and KOBES, Circuit Judges.
_____

KOBES, Circuit Judge.

James Lancaster, a former BNSF Railway Company employee, died from lung cancer in 2018. Rebecca Lancaster, on behalf of her late husband's estate, brought this wrongful death action against BNSF under the Federal Employers' Liability Act (FELA), alleging James's cancer was caused by his exposure to toxins

at work.  The district court[1] excluded Lancaster's expert witness testimony and granted summary judgment to BNSF.  We affirm.

## I.

James worked for BNSF for 33 years.  In 2016, he was diagnosed with lung cancer and died less than two years later.  Lancaster sued, alleging that James's cancer was caused by his exposure to diesel exhaust, silica dust, and asbestos at work.  To prove her case, Lancaster hired two expert witnesses:  Dr. Neil Zimmerman and Dr. Ernest Chiodo.  Dr. Zimmerman was retained to give an opinion on, among other things, James's work-related exposures, while Dr. Chiodo was supposed to give an opinion that the alleged exposures caused James's cancer.  BNSF moved to exclude both experts.  The district court denied the motion as to Dr. Zimmerman but excluded Dr. Chiodo.  Because Lancaster could not prove causation without Dr. Chiodo, the district court granted summary judgment to BNSF.  Lancaster appeals the exclusion of Dr. Chiodo's expert testimony and the resulting grant of summary judgment.

## II.

We review the exclusion of expert testimony for an abuse of discretion, "and will only reverse if its decision was based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998) (citation omitted).

FELA allows a plaintiff to recover by showing that the railroad's negligence played *any* part in causing his or her injury.  *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 506 (1957).  "Because the type of injury [James] suffered had no obvious origin"—like a broken leg from being struck by a car—"expert testimony is

---

[1]The Honorable John M. Gerrard, Senior United States District Judge for the District of Nebraska.

necessary to establish even that small quantum of causation required by FELA." *Brooks v. Union Pac. R.R. Co.*, 620 F.3d 896, 899 (8th Cir. 2010) (citation omitted). Despite FELA's relaxed causation standard, expert testimony must still meet *Daubert*'s and Federal Rule of Evidence 702's requirements for admissibility. *See Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 503 (9th Cir. 1994); *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 47 (2d Cir. 2004).

Under *Daubert*, district courts must make a "preliminary assessment of whether the reasoning or methodology underlying [an expert's] testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–93 (1993) (discussing Fed. R. Evid. 702). "Among the factors to consider is whether the 'expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'" *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1055 (8th Cir. 2000) (quoting *Daubert*, 509 U.S. at 591). "[A]ny step that renders the analysis unreliable renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." *In re Wholesale Grocery Prods. Antitrust Litig.*, 946 F.3d 995, 1001 (8th Cir. 2019) (citations omitted).

The district court found that Dr. Chiodo's opinion lacked a reliable foundation because it was premised on a misunderstanding of Dr. Zimmerman's expert report. *See* Fed. R. Evid. 702 (explaining that testimony must be "based on sufficient facts or data"). Dr. Chiodo thought that Dr. Zimmerman's report concluded that James was exposed to above-background rates of asbestos, diesel exhaust, and silica dust.[2] But as the district court pointed out, Dr. Zimmerman only opined that James had

---

[2]"I take [Dr. Zimmerman's] opinion that Mr. Lancaster was exposed to silica, asbestos[,] and diesel exhaust above and beyond what the average person would be exposed to[,] to then formulate my opinions about general causation and about specific causation." Chiodo Dep. at 54:6–11.

-3-

above-background exposure to silica dust and that James had the *potential* for exposures to diesel combustion fumes[3] and asbestos.

As a result, the district court found Dr. Chiodo's methodology for proving causation unreliable. To prove specific causation[4] between James's exposures and cancer, Dr. Chiodo performed a differential etiology, a test where the expert "rule[s] in" all scientifically plausible causes of injury, and then "rule[s] out" the least plausible causes until the most likely cause remains. *Johnson v. Mead Johnson & Co.*, 754 F.3d 557, 560 n.2 (8th Cir. 2014). The district court found the differential etiology unreliable because it "ruled in" asbestos and diesel combustion fumes as plausible causes of James's lung cancer, but didn't rule them out despite the lack of evidence of exposure. *See Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010) (explaining that "the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue").

While the factual basis of an expert opinion generally goes to its credibility rather than its admissibility, *Hartley v. Dillard's, Inc.*, 310 F.3d 1054, 1061 (8th Cir. 2002), expert testimony that is "speculative, unsupported by sufficient facts, or contrary to the facts of the case" is inadmissible, *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006). *See also Hartley*, 310 F.3d at 1061 (explaining that an expert opinion that is "so fundamentally unsupported that it can offer no assistance to the jury" should be excluded (citation omitted)).

---

[3]Although Lancaster alleged that diesel exhaust exposure was a cause of James's cancer, Dr. Zimmerman determined that diesel exhaust—referring to exhaust coming out of a locomotive engine—is not an issue in this particular case. He instead examined potential exposure to diesel combustion fumes from rope burning. Like the district court, we assume Dr. Chiodo's references to diesel exhaust refer to diesel combustion fumes.

[4]That is, that the exposures *did in fact* cause James's cancer. *See Junk v. Terminix Int'l Co.*, 628 F.3d 439, 450 (8th Cir. 2010).

There is no direct evidence that James was exposed to asbestos[5] or diesel combustion fumes.[6] Even if a jury could infer that James had been exposed, there is no evidence of the level of exposure. While a quantifiable amount of exposure is not required to find causation between a toxic exposure and injury, *see Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 931 (8th Cir. 2001), there must be, at a minimum, "evidence from which the factfinder can conclude that the plaintiff was exposed to levels of that agent that are known to cause the kind of harm that the plaintiff claims to have suffered," *Wright v. Willamette Indus., Inc.*, 91 F.3d 1105, 1107 (8th Cir. 1996). There is no such evidence here. *See Bland v. Verizon Wireless, (VAW) L.L.C.*, 538 F.3d 893, 898 (8th Cir. 2008) (holding there was "simply too great an analytical gap" to support admissibility where expert lacked knowledge of the degree of plaintiff's exposure to toxin (citation omitted)).

Still, Dr. Chiodo relied on the assumption that James was exposed to above-background levels of asbestos and diesel combustion fumes for his differential etiology. As a result, his opinion is speculative at most. *See Concord*, 207 F.3d at 1057 (holding that "[b]ecause of the deficiencies in the foundation of the opinion, the expert's resulting conclusions were mere speculation" (citation omitted)).

The district court did not abuse its considerable discretion by determining that Dr. Chiodo's opinion lacked a sufficient foundation and that, in turn, his

---

[5]"Q: You would agree with me that you don't know if Mr. Lancaster had any exposure to asbestos from work in buildings at the railroad, correct? A: That's correct . . . ." Zimmerman Dep. at 63:17–20. "Q: So as we sit here today, is it fair to say that you also cannot testify that if Mr. Lancaster had exposure to asbestos, it exceeded the appropriate exposure limits for the relevant time period? A: That's correct." *Id.* at 65:24–66:3.

[6]"[T]here is no evidence of any level of exposure to Mr. Lancaster being exposed to products of combustion from burning diesel fuel." Zimmerman Dep. at 94: 4–6. "Q: Therefore, sir, is it correct that you cannot sit here and provide testimony that any potential exposure to diesel fuel combustion products by Mr. Lancaster exceeded an exposure limit or even a proposed exposure limit; is that fair? . . . . A: Yes, because there—as I said, we don't know what his exposure was." *Id.* at 96:4–11.

methodology for proving causation was unreliable.[7] *See Wholesale Grocery*, 946 F.3d at 1003 (holding that the district court did not abuse its discretion by excluding an expert's testimony, given that the factual assumption underlying the application of the expert's methodology was "insufficiently validated," so his opinion was "ultimately speculative").

## III.

Having decided that the district court did not abuse its discretion in excluding Dr. Chiodo's testimony, we conclude that the district court did not err in in granting BNSF's motion for summary judgment[8] because Lancaster cannot otherwise establish causation.  We affirm.

_____

[7]The district court had additional grounds for excluding Dr. Chiodo's testimony, but we decline to reach those as its decision was sufficient on this basis. *Wholesale Grocery*, 946 F.3d at 1001 ("Under *Daubert*, any step that renders the analysis unreliable renders the expert's testimony inadmissible." (citation omitted)).

[8]We review grants of summary judgment *de novo*, *see Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017), and will affirm if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).